## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**DYNISHA SMITH,**

              **Plaintiff,**                 **CIVIL ACTION NO. 14-cv-14614**

        **v.**                         **DISTRICT JUDGE THOMAS L. LUDINGTON**

**COMMISSIONER OF**               **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dynisha Smith seeks judicial review of Defendant Commissioner of Social Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 13) and Defendant's Motion for Summary Judgment (docket no. 14). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

## I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 13) be GRANTED IN PART and Defendant's Motion for Summary Judgment (docket no. 14) be DENIED. It is further recommended that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of Dr. Hall's opinion.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income with a protective filing date of September 30, 2013, alleging that she has been disabled since April 17, 2013, due to cervical and lumbar radiculopathy, chronic headaches, obesity, post traumatic cervicalgenic headaches, major depression and mood disorders, arthritis, chronic pain, cervicalgia on her right side, abnormal thoracic core signal, and episodes of numbness in her arms and legs.  (TR 115, 192-200, 220.)  The Social Security Administration denied Plaintiff's claims on December 19, 2013, and Plaintiff requested a *de novo* hearing.  (TR 103-15, 127-29.)  On August 22, 2014, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Ramona L. Fernandez.  (TR 24-57.)  Plaintiff amended her alleged onset date to the application date of September 30, 2013 in a pre-hearing memorandum and at the hearing.  (TR 260, 28.)  In a September 5, 2014 decision, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (TR 10-19.)  The Appeals Council declined to review the ALJ's decision (TR 1-5), and Plaintiff commenced this action for judicial review.  The parties then filed cross motions for summary judgment, which are currently before the Court.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter and provides a brief, general statement of facts, which is not supported by citations to the record.  (Docket no. 13 at 8-9.)  The ALJ set out a factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in her decision.  (TR 15-18.)  Defendant also provided a summary of the procedural history, Plaintiff's medical record, and Plaintiff's hearing testimony in her brief.  (Docket no. 14 at 4-6.)  There are no material

inconsistencies among the aforementioned accounts of the record; therefore, to the extent that they are supported by citations to the record, the undersigned will incorporate the factual recitations by reference.  Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing transcript and will include comments and citations as necessary throughout this Report and Recommendation.

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 30, 2013, and that Plaintiff suffered from the following severe impairments: cervical and lumbar disc disease; headaches; obesity; major depressive disorder; mood disorder; and pain disorder.  (TR 12.)  The ALJ also found that Plaintiff's goiter and brain lesions were non-severe impairments.  (TR 12.)  Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (TR 12-13.)  The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(b) except occasional climbing, stooping, kneeling, crouching, crawling, or balancing; no ladders, ropes, or scaffolds; she requires the opportunity to change position after 20 minutes or [sic] standing 15 minutes; occasional overhead reaching and handling; occasional twisting or turning at the neck; she should avoid hazards including moving machinery; she should avoid unprotected heights; simple, routine, repetitive tasks with few, if any, workplace changes; no fast paced production requirements; and occasional interaction with the general public.

(TR 14-17.)  Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy.  (TR 18.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time since September 30, 2013, the date the application was filed.  (TR 10, 18-19.)

3

## V.    LAW AND ANALYSIS

### A.    Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where

4

the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled.  *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987).   This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

### C.    Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)."  *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing.  42 U.S.C. § 405(g).  Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four because (1) "[t]he substantial evidence on the record demonstrates that controlling weight was not given to the objective medical evidence;" and (2) "[t]he RFC determination by the ALJ did not accurately portray [Plaintiff's] physical and mental impairments and nonexertional limitations."  (Docket no. 13 at 11-18.)

### 1.    The ALJ's Assessment of the Medical Evidence

#### a.    Plaintiff's Treating Physician, Dr. Jamie Hall, M.D.

First, Plaintiff argues that the ALJ failed to give good reasons for discounting the opinion of her treating physician, Dr. Jamie Hall, M.D.  (Docket no. 13 at 11-14.)  It is well settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and

6

laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors:  (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)).  An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation."  *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)).  The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight.  *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ's discussion of Dr. Hall's opinion is reproduced below in its entirety:

> The medical source statements from the primary doctor, J. Hall, MD dated April 9, 2014 indicate the claimant cannot work for more than 6 months and is limited to a reduced range of sedentary work inconsistent with competitive employment. (Exhibits C8F, C11F).  These are inconsistent with the claimant's testimony, the treatment history, and the objective evidence, which do not support such degree of restriction.  This is granted little weight due to these deficits.

(TR 17.)

Plaintiff asserts that the ALJ's reasoning for discounting Dr. Hall's opinion is conclusory and without rationale.  (Docket no. 13 at 11.)  She further contends that the ALJ "never attempts to explain why Dr. Hall's medical opinion is not consistent with the claimant's testimony, the treatment history, or the objective evidence" and that the ALJ "points to no substantial evidence in the record to dispute Dr. Hall's medical opinions."  (*Id*. at 11, 12.)  Plaintiff's argument holds merit.

The ALJ's explanation for discounting Plaintiff's treating physician's opinion in the instant matter is substantially similar to that in *Gayheart v. Comm'r of Soc. Sec.*, for which that case was remanded.  710 F.3d 365 (6th Cir. 2013).  In *Gayheart*, the ALJ discounted the treating

physician's opinions on the grounds that they were "not well-supported by any objective findings" and were "inconsistent with other credible evidence."  710 F.3d at 376.  The Sixth Circuit found that those were not good reasons because the ALJ's first line of reasoning was ambiguous and because the ALJ did not support his second line of reasoning by identifying the evidence that was purportedly inconsistent with the treating physician's opinions.  *Id*. at 376-77.  Like the ALJ in *Gayheart*, the ALJ in the instant matter does not offer any explanation or identify any evidence to support her conclusion that Dr. Hall's opinion is inconsistent with the hearing testimony and the medical record.  The ALJ's perfunctory and conclusory statement in this regard makes review nearly impossible.  The ALJ in the instant matter did not provide good reasons for discounting Dr. Hall's opinion, as it is not sufficiently specific to explain the reasoning behind the decision.  *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245-46 (6th Cir. 2007) (An ALJ's explanation that "the record does not support the limitations of the severity suggested by [the claimant's treating physician]" is inadequate to satisfy the notice requirement discussed in Social Security Ruling (SSR) 96-7p.).

Defendant argues that the ALJ did provide good reasons for rejecting Dr. Hall's opinion and submits analysis and citations to the record in support of the ALJ's conclusions.  (Docket no. 14 at 7-10.)  She also argues that the ALJ properly discounted Dr. Hall's opinion because it was "poorly explained."  (*Id*. at 10-11.)  But Defendant's post-hoc rationalization of the ALJ's assessment of Dr. Hall's opinion does not cure the ALJ's failure to provide good reasons.  *See Christephore v. Comm'r of Soc. Sec.*, No. 11-13547, 2012 WL 2274328, at *6 (E.D. Mich. June 18, 2012) (Roberts, J.) ("[I]t is not the Court's job to conduct a *de novo* review of the evidence or to rubber stamp the ALJ's decision.  The Court must ensure both that the ALJ applied the correct legal standard and that his decision is supported by substantial evidence.  Moreover, it is the

ALJ's rationale that is under review, not defense counsel's."). Furthermore, despite Defendant's assertion that Dr. Hall's opinion is poorly explained, it is not so patently deficient as to render the ALJ's procedural error harmless. Accordingly, remand of this matter for a proper assessment of Dr. Hall's opinion is warranted.

        b.    Plaintiff's Treating Psychiatrist, Dr. Theadia Carey, M.D.

Plaintiff also challenges the ALJ's assessment of the opinion of her treating psychiatrist, Dr. Theadia Carey, M.D. (Docket no. 13 at 14.) Specifically, Plaintiff finds fault with the ALJ's reliance on the GAF scores that Dr. Carey assigned to Plaintiff and also argues that "[n]o other evidence is weighed form [sic] the treating psychiatrist. (*Id.*) The ALJ addressed the record evidence from Dr. Carey as follows:

> The treating psychiatrist, T. Carey, MD assessed the psychiatric severe impairments and a GAF of 55-60. The GAF score is consistent with work and is granted great weight. (Exhibits C1F, C14F).

(TR 17.)

Plaintiff's argument with regard to the ALJ's reliance on the GAF scores is convoluted. In one instance, without citing authority, Plaintiff asserts that GAF scores have no legal significance in Social Security cases; in the next instance, Plaintiff acknowledges that "[a] GAF score may help an ALJ assess mental RFC." (Docket no. 13 at 14 (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503 n.7 (6th Cir. 2006)).) Indeed, while case law from various districts around the country indicates a significant reliance on GAF scores, the Eastern District of Michigan has not followed that trend. *See Pellow v. Astrue*, No. 09-11587, 2010 WL 1626396, at *5 (E.D. Mich. Mar. 31, 2010) (Morgan, M.J.) ("Plaintiff's GAF scores are a relevant part of her mental health history, but the GAF scores are by no means controlling, nor is there any law, regulation, or controlling case law that requires that the scores receive significant weight in the

ALJ's evaluation of her residual functional capacity."); *Blavatt v. Comm'r of Soc. Sec.*, No. 10-10930, 2011 WL 836805, at *9 (E.D. Mich. Feb 4, 2011) (Randon, M.J.) ("[T]he Sixth Circuit has observed, 'no statutory, regulatory, or other authority requir[es] the ALJ to put stock in a GAF score.'") (quoting *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (modification in original); citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).

While the case law cited above indicates that GAF scores are not per se entitled to significant weight, Plaintiff has not cited any authority that prohibits an ALJ from according them significant weight.  Accordingly, the ALJ did not err in this regard.  Moreover, the ALJ's finding that Plaintiff's GAF scores of 55-60[1] are "consistent with work," although slightly ambiguous, does not constitute reversible error, particularly where, as Defendant argues, the ALJ did not rely solely on the GAF scores in finding that Plaintiff is capable of performing a significant number of jobs in the national economy.  Finally, any error committed by the ALJ in failing to fully assess Dr. Carey's opinion is harmless, as the ALJ adopted Dr. Carey's diagnoses of major depressive disorder and mood disorder as severe impairments (*compare* TR 628 *with* TR 12), and Dr. Carey did not opine regarding any functional limitations caused by Plaintiff's mental disorders.  Therefore, Plaintiff's Motion with regard to the ALJ's assessment of Dr. Carey's opinion should be denied.

---

[1] A GAF score is a subjective determination based on a scale of 1-100 of "the clinician's judgment of the individual's overall level of functioning."  *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) 32-34.  ("DSM-IV").  A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning.  *Id.*

2.      *The ALJ's Assessment of Plaintiff's RFC*[2]

Next, Plaintiff contends that the ALJ's RFC assessment does not accurately portray her physical and mental impairments and non-exertional limitations.  (Docket no. 13 at 15-18.)  In making this argument, Plaintiff makes general accusations, such as "[t]he ALJ listed no objective medical evidence nor does the ALJ offer any analysis or insight through the decision into her residual functional capacity (RFC) determination" and "[t]here is not a scintilla of evidence to support her RFC assessment that Plaintiff would be capable of sedentary work on a sustained basis with benign restrictions."  (*Id*. at 15, 16.)  Plaintiff presents a laundry list of ALJ errors similar to these, but she does not cite to record evidence or medical assessments to support her claims.  Specifically, Plaintiff sets forth challenges to the ALJ's assessment of Plaintiff's brain lesions as a non-severe impairment, the ALJ's assessment of Plaintiff's credibility, and the ALJ's compliance with SSR 96-8p, which will be addressed in turn.

a.      The ALJ's Step-Two Determination

Plaintiff challenges the ALJ's determination that her brain lesions are a non-severe impairment.  (Docket no. 13 at 16-17.)  A severe impairment or combination of impairments is one that significantly limits the claimant's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment will be considered non-severe only if it is a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience."  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted).  But the step-two severity analysis is simply a threshold determination. It is well established that "once any one impairment is found to be severe, the ALJ must consider

---

[2] The ALJ's assessment of Plaintiff's RFC may change upon remand, yet the undersigned will address Plaintiff's instant claims of error.

both severe and nonsevere impairments in the subsequent steps," and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This is so because the second step is designed simply to screen out and dispose of baseless claims. *Anthony*, 266 F. App'x at 457. Stated differently, as long as the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does not constitute reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, in assessing Plaintiff's impairments at Step Two of the sequential evaluation process, the ALJ acknowledged that Plaintiff's June 2014 cervical MRI showed lesions. (TR 12 (citing TR 405).) The ALJ then reasoned that the lesions were non-severe because they hadn't changed since 2008 (citing TR 312) and because there was no evidence that Plaintiff was limited by any neurological disorder. (TR 12.) As Plaintiff points out, however, the ALJ misinterpreted the medical records. The record evidence cited by the ALJ indicates that a lesion on her thoracic spinal cord hadn't changed since 2008 (TR 312); Plaintiff's June 2014 MRI of her brain and cervical spine revealed "new small active/enhancing lesions" on her brain. (TR 404, 406-07.) Moreover, the ALJ did not discuss Plaintiff's brain lesions at any point in her decision beyond Step Two. As discussed above, such a failure to consider this impairment at the remaining steps of the sequential evaluation process would normally constitute reversible error. In this instance, however, the ALJ's error is harmless. As Defendant points out, Plaintiff's neurologist did not diagnose a neurological disorder or assess functional limitations as a result of her brain lesions. (*See* docket no. 14 at 22-23.) Indeed, Plaintiff underwent a spinal tap in July 2014 to further investigate her MRI results (TR 405), but there is no further evidence in the record regarding the

13

lesions that the ALJ should have or could have considered at the remaining steps of the sequential evaluation process. Accordingly, any error committed by the ALJ in finding Plaintiff's brain lesions to be a non-severe impairment is harmless, and Plaintiff's Step-Two challenge fails.

b.      The ALJ's Assessment of Plaintiff's Credibility

Next, Plaintiff asserts that "[t]he ALJ never in her decision does not reject the claimant's severe complaints in any satisfactory way nor does she dispute the Plaintiff's complaints." (Docket no. 13 at 16.) "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). But credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "[T]he adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *Id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available

objective medical evidence does not substantiate your statements." 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The ALJ will consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for symptom relief, (6) any measures used to relieve the symptoms, and (7) functional limitations and restrictions due to the pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors). As part of her argument, Plaintiff asserts that the ALJ failed to consider these factors. (Docket no. 13 at 17-18.)

Here, the ALJ considered and discussed Plaintiff's hearing testimony and other subjective complaints in conjunction with the record evidence, and she found that Plaintiff's allegations were not entirely credible. (TR 15-17.) In reaching this determination, the ALJ reasoned as follows:

> The current evidence does not suggest the physical conditions are as severe as alleged. The treatment is generally conservative—chiropractic care and medication. The claimant has not been referred for more aggressive care and has declined injections.
>
> The claimant persists in receiving chiropractic care against multiple recommendations. The claimant testified that she has not been able to receive recent treatment due to lack of insurance. This conflicts with the chiropractic care, which has been very frequent. She testified that the neurologist disapproved of upper body care but consented to lower body care. This is consistent with Exhibit C9F. However, she also testified that she continues to receive neck adjustments for head pain. This indicates some degree of non-compliance, which does not suggest conditions of the severity alleged. It is likely conditions or pain of disabling severity would motivate the claimant to follow all recommendations given and would require increasingly aggressive care over time. This is not reflected in the file, and the discrepancy discredits the claimant's claim. The claimant testified that she naps "once in a blue moon." She followed this by stating that she spends most of the day in bed and naps 4-6 hours 3-4 days per week. (Testimony). This is unsubstantiated and further discredits her. It suggests embellishment for this appeal.

15

(TR 16.)  The ALJ also noted Plaintiff's inconsistent testimony with regard to marijuana use.
(TR 16.)  She also reasoned that Plaintiff's alleged inability to perform basic household chores
such as cooking and cleaning did not comport with Plaintiff's treatment history.  (TR 16.)
Notably, Plaintiff does not specifically contest or dispute any of these reasons set forth by the
ALJ in discounting Plaintiff's credibility.

As discussed and cited above, the ALJ provided specific reasons for discounting
Plaintiff's credibility in her decision, many of which apply the factors set forth in 20 C.F.R. §
416.929(c)(3).  Thus, the ALJ's decision is sufficiently specific to make clear to Plaintiff and to
the Court the weight that she gave to Plaintiff's statements and the reasons for that weight.  The
ALJ's assessment of Plaintiff's credibility is supported by substantial evidence and should not be
disturbed; Plaintiff's Motion should be denied in this regard.

### c.      The ALJ's Compliance with SSR 96-8p

Much of Plaintiff's second main argument challenges the ALJ's formulation of Plaintiff's
RFC and compliance with SSR 96-8p by making general assertions like: "There is no rationale in
the decision whatsoever to describe how Plaintiff can perform so much despite the severe
impairments as determined by the ALJ in her decision and documented in the medical records."
(Docket no. 13 at 15-18.)  Plaintiff also claims that the ALJ did not factor Plaintiff's severe
impairments into Plaintiff's RFC.  (*Id.* at 16.)  Additionally, Plaintiff asserts that the ALJ erred
by failing to account for her testimony that she attends twenty doctor appointments per month in
the RFC.  (*Id.* at 17.)

The RFC assessment is the Commissioner's ultimate finding about the claimant's ability
to perform work-related activities.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5.

16

It is defined as the most, not the least, the claimant can do despite his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ derives the RFC after considering the medical and other relevant evidence in the record.  *Id*.  He must support the RFC by including a narrative discussion describing how the evidence supports his conclusions and providing citations to specific medical facts and nonmedical evidence.  SSR 96-8p, 1996 WL 374184, at *7.  In determining the RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary setting on a regular and continuing basis.  *Id.*  The ALJ may adopt an opinion of a medical or nonmedical source in whole or in part if he finds that it is supported by and not inconsistent with the other substantial evidence of record.  However, at all times the ultimate responsibility for fashioning the RFC rests with the ALJ, who has an obligation to determine the RFC based on the evidence he finds credible.

Social Security Ruling 96-8p explicitly provides that the ALJ must include a narrative discussion describing how the evidence supports each conclusion.  Courts in this district and circuit have held that the ALJ's failure to link the evidence to the ultimate RFC requires a reversal and sentence four remand:  "An ALJ ... must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning."  *Meyer v. Comm'r of Soc. Sec.*, No. 10-cv-12963, 2011 WL 3440152, at *9 (E.D. Mich. Jun. 9, 2011) (quoting *Lowery v. Comm'r of Soc. Sec.*, 55 F. Appx. 333, 339 (6th Cir. 2003)).  The *Meyer* court further found that it "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result."  *Id*. (citations and internal quotation marks omitted).

Here, ALJ Fernandez acknowledged that Plaintiff's previous Title II and Title XVI applications for benefits were denied through the decision of another ALJ on April 12, 2013.

17

(TR 14.)  In that decision, ALJ John J. Rabaut found that Plaintiff suffered from essentially the same severe impairments as did ALJ Fernandez:  cervical and lumbar disc disease with radiculopathy; depressive disorder, headaches, and obesity.  (TR 87-88.)  ALJ Rabaut then considered and discussed the record evidence and hearing testimony and concluded that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that the claimant cannot climb ladders, ropes or scaffolds.  The claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch and crawl.  The claimant can only occasionally perform overhead reaching and handling.  The claimant should avoid concentrated exposure to moving machinery, and all exposure to unprotected heights.  The claimant's work should be limited to simple, routine, and repetitive tasks; performed in a work environment free of fast-paced production requirements; involving only simple, work-related decisions, with few, if any, workplace changes.  The claimant's work should not require more than occasional interaction with the general public.

(TR 89-96.)  ALJ Fernandez noted that she was bound by ALJ Rabaut's decision absent new and additional evidence or changed circumstances, and she determined that such evidence did exist to support a change in Plaintiff's RFC.  (TR 14.)

First, ALJ Fernandez addressed Plaintiff's hearing testimony that her symptoms were generally unchanged since the 2007 car accident from which her purported back pain, neck pain, and headaches allegedly originated, except she was experiencing increased neck pain, increased difficulty reaching, and increased dizziness.  (TR 15.)  The ALJ addressed Plaintiff's neurologist's June 2014 diagnosis of cervical spondylosis and cervicalgia as well as the neurologist's opinion that an April 19, 2013 MRI of Plaintiff's spine was similar to that from 2007.  (TR 15.)  She also noted that Plaintiff's recent physical exams confirmed spinal tenderness in the neck and lower back along with decreased range of motion.  (TR 15.)  The ALJ

also considered Dr. Hall's diagnosis of intervertebral disc disorder and noted that Plaintiff's obesity likely contributed to her pain.  (TR 15.)

Next, ALJ Fernandez considered the treatment Plaintiff had received since the prior unfavorable disability determination.  (TR 15.)  The ALJ pointed out Plaintiff's significant and ongoing chiropractic treatment despite her neurologist and primary care doctor's advice against it.  She noted that Plaintiff had declined pain injections because they provided little relief, that Plaintiff had not been referred for surgery, and that Plaintiff had been treated only with pain medications and recommendations for stretching exercises.  The ALJ also considered that a recent spinal tap caused Plaintiff to suffer increased neck pain, dizziness, headaches, vomiting, and constipation, for which her neurologist recommended an increased intake of water, fruits, and vegetables.

ALJ Fernandez also discussed Plaintiff's psychiatric records and found that they suggested no worsening of her symptoms since the prior unfavorable decision or since the time of the car accident.  (TR 16.)  Additionally, the ALJ assessed the credibility of Plaintiff's complaints in conjunction with the medical evidence, as discussed *supra*.  The ALJ then concluded that, based on the new evidence, Plaintiff's condition had not significantly worsened.  (TR 15, 16.)  She found that the limited change in Plaintiff's condition, particularly the dizziness, was sufficient to further limit Plaintiff to sedentary work with limited twisting of the neck but that all of the other limitations from ALJ Rabaut's RFC assessment were still applicable and that there was no basis for any other restrictions.  (TR 15, 16, 17.)

The immediate discussion demonstrates that the ALJ considered Plaintiff's severe impairments in conjunction with the evidence of record and crafted an RFC that accurately portrays Plaintiff's credible limitations.  In doing so, the ALJ provided a discussion that

19

adequately complies with the requirements of SSR 96-8p. With regard to the ALJ's failure to account for Plaintiff's testimony that she attends twenty doctor appointments per month in the RFC, Plaintiff's argument fails, as it is axiomatic that an ALJ need not discuss every piece of evidence in the record. *Kornecky*, 167 F. App'x at 508 (citation omitted). Furthermore, as Defendant points out, fifteen of Plaintiff's twenty doctor appointments relate to chiropractic treatment, which, as the ALJ acknowledged, both Plaintiff's primary care doctor and neurologist have advised against. (*See* docket no. 14 at 24.) Plaintiff's Motion should be denied in this regard. Based on the above considerations, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence, and it should not be disturbed.

### 3.   *Plaintiff's Other Arguments*

To the extent Plaintiff sets forth other arguments in her brief, such as that the ALJ should have contacted the treating source for clarification, that the ALJ ignored medical evidence in the record, that the ALJ failed to evaluate Plaintiff's indigence, or any further issues with the ALJ's RFC assessment other than those addressed above, such arguments are either completely undeveloped, incorrect, and/or made without performing a thorough review of the ALJ's decision. For instance, Plaintiff claims that "[t]he ALJ lists the Plaintiff's conservative treatment for her RFC, but fails to evaluate the Plaintiff's indigency [sic] as cause of the lack of treatment as required in Social Security regulations." (Docket no. 13 at 15.) Plaintiff is incorrect; the ALJ acknowledged Plaintiff's testimony that she had not been able to receive treatment due to a lack of insurance and found it to be less than credible because of Plaintiff's frequent chiropractic care. (TR 16.) Additionally, Plaintiff bases her argument that the ALJ should have contacted her treating physician for clarification on this premise: "The ALJ states in her opinion she could not ascertain the reasoning for the treating physician opinion, however, instead of following SSR 96-

5p she simply dismissed the treating physician opinion." (Docket no. 13 at 12-13.) Again, Plaintiff is mistaken. The ALJ does not make such a statement anywhere in her decision, Plaintiff's argument, therefore, fails. With regard to Plaintiff's undeveloped arguments, the Court is not obligated to address perfunctory arguments or develop them on Plaintiff's behalf, and it declines to do so. *See Bush v. Astrue*, No. 12-11790, 2013 WL 1747807, at *14 (E.D. Mich. Jan. 25, 2013) (Grand, M.J.) (citation omitted).

## VI.    CONCLUSION

For the reasons stated herein, the Court should GRANT IN PART Plaintiff's Motion for Summary Judgment (docket no. 13) and DENY Defendant's Motion for Summary Judgment (docket no. 14). This matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a proper assessment of Dr. Hall's opinion.

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 12, 2016          s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: January 12, 2016          s/ Lisa C. Bartlett
                                 Case Manager

22